SECOND NEW HAVEN BANK, Plaintiff-Appellee, *v.* KOBRITE, INC., Defendant.—(UNITED FIRE & CASUALTY COMPANY *et al.*, Appellants).

Second District   Nos. 79-216, 79-754 cons.

Opinion filed July 22, 1980.—Rehearing denied August 26, 1980.

Daniel J. Leahy, of Leahy & Eisenberg, of Chicago, for appellants.

Schmelzle, Kroeger, Eckert, Burt & McClanathan, of Freeport, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, Second New Haven Bank (the Bank), secured a judgment by confession against the defendant, Kobrite, Inc., a corporation (Kobrite). In a citation proceeding it sought to recover the balance due on the proceeds of a fire insurance policy issued to Kobrite by the defendant insurance companies, United Fire & Casualty Company, Downers Grove Farmers Mutual Insurance Company, and Addison Farmers Mutual Insurance Company (the Insurers), covering Kobrite's premises and property which had suffered a fire loss prior to the Bank's judgment. The trial court ordered the Insurers to pay the Bank the

amount of Kobrite's loss over their objection that the insured had not filed proofs of loss pursuant to the policies. The parties agreed that the policy coverage was in excess of the amount due to the Bank, and the circuit court entered the judgment from which the Insurers appeal. They contend that they do not hold assets in the nature of insurance proceeds, claiming the failure of the judgment debtor to file a proof of loss as a precondition to liability.

The Bank obtained a judgment by confession on June 7, 1977, in the sum of $54,103.06. Pursuant to that order a sheriff's sale of Kobrite's personal property was held that produced $5,000 in proceeds. The Kobrite premises were damaged by fire on April 9, 1977. The citations to discover assets were served on the Insurers on June 9, 1977. Only United Fire & Casualty responded to the citation by producing a certified copy of its insurance policy.

The Bank filed a motion on July 17, 1977, requesting that it be included as payee in all drafts paid by the Insurers in settlement of Kobrite's claim. The Insurers filed waivers of notice and consented to the entry of the order entered on July 21, 1977, making the Bank a payee on all drafts issued by the Insurers and directing that it receive any notices, reports or other correspondence which Kobrite, as insured, was entitled to receive.

The Bank filed a motion for payment of the insurance proceeds on December 5, 1977. In its motion it alleged that it had filed proofs of loss with the Insurers to support its claims under the respective policies accompanied by an itemized statement of loss but that it had received notice that its proofs of loss had been rejected by each Insurer. The Insurers denied that the Bank had acquired an interest in the insurance policies and set forth as affirmative matter that a mortgagee, Lease American Corporation, was named in the policies as having an interest in some of the property and had filed proofs of loss. The Insurers therefore sought direction as to whether the Bank should be included on any drafts, disbursing monies to Lease America Corporation. It is agreed that Kobrite, the named insured under the policies, did not file a proof of loss as required by each policy of insurance.

In the order appealed from the trial court found that no proofs of loss had been filed directly by Kobrite; that the Bank had filed timely proofs of loss with the Insurers with respect to the fire loss; and that these proofs filed by the Bank contained all information required under the policies of insurance.

Primarily in issue is whether the Bank as a judgment creditor of the insured can recover in citation proceedings against an insurer absent compliance by the insured with the provisions of the policy requiring the

insured to file proofs of loss. The direct issue appears to be of first impression in Illinois.

■■ Initially, we must reject the Bank's argument that the Insurers are precluded from contesting lack of compliance with the policy provisions because the insurance policy itself is not a part of the record. The trial court was fully informed of the relevant contents of the policy which were quoted at length in the Insurer's pleadings. These circumstances distinguish *Gomez v. Resolute Insurance Co.* (1971), 2 Ill. App. 3d 180, 183-84, cited by the Bank and require that we reach the issue on its merits.

■■ In general, "a judgment creditor may not recover from a third-party citation defendant unless the judgment debtor could have recovered from the third-party defendant in a citation proceeding." (*Sobina v. Busby* (1965), 62 Ill. App. 2d 1, 14.) However, insurance proceeds, although contingent, may be an asset of the debtor to the extent that rights under the policy may be adjudicated in the citation proceedings. (*Sobina,* at 17). In the adjudication, the citation defendant may litigate any proper defense to recovery under the policy. *Sobina,* at 20.

■■ As a general rule, a condition in a fire insurance policy requiring proof of loss within a specific period after a fire is valid and the failure to comply, absent waiver or initial denial of liability, will relieve the insurer of its duty to perform under the contract. (See, *e.g., Tarzian v. West Bend Mutual Fire Insurance Co.* (1966), 74 Ill. App. 2d 314, 326.) However, a judgment creditor in a citation proceeding who seeks to recover the proceeds of the debtor's insurance policy and thus stands in the position of the insured debtor cannot, in our view, be precluded from recovery merely because of the inaction of the debtor. Section 73 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 73), providing for proceedings by way of citation to discover assets of a debtor, is to be construed liberally. (*Celano v. Frederick* (1964), 54 Ill. App. 2d 393, 401.) It would appear to be contrary to the spirit of the supplementary proceedings if the creditor is to be strictly bound by the debtor's action or inaction.

Mainly, the provision requiring prompt proof of loss is intended to give the insurer the opportunity to investigate the claim, with the view towards securing information as to any possible defense. (*Cf. Wiacek v. Hospital Service Corp.* (1973), 15 Ill. App. 3d 698, 701.) The fact that the formal proofs of loss were submitted by the judgment creditor rather than the insured in this case did not substantially thwart that purpose. The fire occurred on April 9, 1977, and apparently was the subject of an immediate investigation by the State Fire Marshall. The citation was served on the Insurers on June 9, 1977, requesting the Insurers to produce the insurance policies in effect and the entire claim file concerning the

investigation and adjustment of the fire loss on the Kobrite premises. There is evidence in the record that adjusters had been investigating the loss during the previous period from the date of the fire, and that there were discussions with John Bos who had owned Kobrite until December of 1974, when 80% of the company was purchased by Mersick Industries with Bos continuing to be president and manager until June 2, 1977. The Insurers were notified of the fire loss within two days following the fire. Adjusters for the Insurers met with attorneys for the Bank and with John Bos on July 6, 1977. There is evidence that Bos made the corporate records of Kobrite available for examination at the meeting and that after the meeting the parties involved including arson investigators inspected the physical premises of Kobrite for an entire afternoon. The Insurers consented to an order that the Bank be included as a payee on all drafts paid by the Insurers in settlement of Kobrite's claim in response to a motion which the Bank filed on July 17, 1977.

The trial court specifically found, and it is apparent from the record, that at no time did the Insurers raise any defense to payment either to Kobrite or to the Bank other than raising the legal question that Kobrite itself had filed no proofs of loss. The Insurers argue in this connection that they were prejudiced in proving their arson defense in that they were unable to obtain the examination of the officers and corporate records since Kobrite did not file proof of loss. They maintain that the insurance policies gave them examination rights only when the insured has filed proofs of loss. They also contend that the Bank should have proceeded under subsections (2)(a), (f) of section 73 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 73(2)(a), (f)).

We do not perceive any prejudice to the Insurers in the conduct of the section 73 proceedings. The Bank's motion for payment of the proceeds put the Insurers on notice that their liability on the policy was at issue. They made no attempt to get discovery or serve subpoenas for the production of records. The Bank was clearly proceeding in place of Kobrite, the insured, and any defenses on the policy could have and should have been asserted in the supplemental proceedings.

The clear import of the Insurers' conduct in this case throughout the proceedings shows a reliance on their position that as a matter of law only the insured could make proofs of loss. No substantial reason precluded the Insurers from having the necessary discovery during the citation proceedings, to which they were entitled. *Cf. Sobina*, at 20.

It seems clear that the Insurers were not making a serious defense on the basis of proof of arson. The sole reference to that defense is a stipulation in the record that the State Fire Marshall if called to testify would state that the fire was "purposely set by a person or persons unknown." This does not, of course, establish that the insured or his agent

were guilty of arson. In sum, the Insurers were not precluded from maintaining their arson defense in the citation proceedings but, in fact, chose to rely upon the legal defense of the creditor's inability to recover because the insured had not itself made the proofs of loss.

■ As previously noted we have not been directed to or have we been able to find any Illinois authority which directly addresses the issue before us. We note that in the early case of *German Fire Insurance Co. v. Grunert* (1884), 112 Ill. 68, 73, the court quoted with approval from a text on fire insurance to the effect that proofs of loss "should be made either by the assured, his agent, *or party in interest."* (Emphasis added.) In *Northwestern Insurance Co. v. Atkins* (1867), 66 Ky. 328, 333, the insurers raised a defense similar to the one here that the noncompliance of the insured with the condition that he must file the proof of loss was fatal to a recovery by the creditor of the insured. The court reasoned that although the insured had not taken the necessary steps to render his claim payable that it was nevertheless a valuable right which the creditor could attach as security for her debt; and it noted that proof of loss could be made under the policy by the creditor taking the deposition of the insured. (See also *Reid, Murdock & Co. v. Mercurio* (1902), 91 Mo. App. 673, 688.) Here, of course, we have the proofs of loss being made directly by the creditor and concededly giving all the required information and challenged on the basis that only the debtor could make the proofs. We think the reasoning of this old case is still persuasive based on the facts of this case and the open liberality of the supplementary proceedings provided in Illinois. (*Cf. Michigan Fire & Marine Ins. Co. v. National Surety Corp.* (8th Cir. 1946), 156 F. 2d 329, 331.) There, the Surety Corporation, as an assignee of the insured's right to proceeds payable under an insurance policy, was permitted to enforce its claim for fire loss on the basis of sworn statements of loss which the Surety Company made.

We therefore affirm the judgment of the trial court in No. 78-216.

No. 79-754

Lease America Corporation (the Mortgagee) sued the same Insurers alleging that its mortgage interest in equipment of Kobrite was insured against fire loss; that it had furnished proofs of loss to the Insurers and that each had refused to pay. The Insurers answered that an order entered in suit No. 79-216 directed that the Bank be included as a payee on any drafts and that, thus, they were unable to pay the Mortgagee pending the result of the appeal in No. 79-216. The mortgagee and the insurers entered into a stipulation and agreement to settle the suit for $37,000. Judgment was entered in that amount before a different judge than the ordering judge in No. 79-216. He found the order to include the Bank in the prior

838

appeal to be void inasmuch as Lease America was not made a party in that case. He ordered that the Insurers pay the $37,000 judgment to the Mortgagee without making the Bank a payee.

■■ The Insurers appealed from the judgment and in their notice of appeal asked that the case be consolidated with No. 79-216. We granted the motion. No briefs have been filed in the separate appeal. We therefore exercise our authority to dismiss the appeal in No. 79-754. Ill. Rev. Stat. 1977, ch. 110A, par. 343. See also *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 131.

The judgment in No. 79-216 is affirmed. The appeal in No. 79-754 is dismissed.

Affirmed in part; dismissed in part.

VAN DEUSEN and UNVERZAGT, JJ., concur.