STONECRAFTERS, INC., Indiv. and on Behalf of Members of a Certified Class, as Assignee, Plaintiff and Third-Party Citation Petitioner-Appellant, v. WHOLESALE LIFE INSURANCE BROKERAGE, INC., Defendant (Unitrin, Inc., *et al.*, Third-Party Citation Respondents-Appellees).

Second District   No. 2—08—0865

Opinion filed July 13, 2009.—Rehearing denied October 8, 2009.

Steven A. Smith and Brian J. Wanca, both of Anderson & Wanca, of Rolling Meadows, and Phillip A. Bock and Robert M. Hatch, both of Bock & Hatch, LLC, of Chicago, for appellant.

Douglas L. Prochnow and Matthew M. Garrett, both of Wildman, Harrold, Allen & Dixon, LLP, of Chicago, and Tom E. Rausch, of Gummerson Rausch Wand Gray Wombacher, LLC, of Woodstock, for appellees.

JUSTICE BURKE delivered the opinion of the court:

This interlocutory appeal, brought pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), involves two certified questions that are based on *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141 (2003). First, is a liability insurer that has breached its duty to defend an underlying lawsuit and is estopped from raising any coverage defense also collaterally estopped from challenging the trial court's express finding of the reasonableness of the underlying settlement between the insured and the plaintiff? Second, if not, can the trial court permit the insurer to take discovery regarding the reasonableness of the underlying settlement? We hold that *Guillen* does not prevent an insurer from challenging the reasonableness of the underlying settlement even though it has breached its duty to defend and is prevented from claiming a coverage defense. Further, because *Guillen* allows the insurer to request a hearing where the plaintiff must prove that the settlement it reached with the insured was reasonable, under the facts in this case the trial court must permit the parties to take discovery regarding the reasonableness of the settlement. Accordingly, we answer the first question in the negative and, given the facts of this case, we answer the second question in the positive, and we remand the cause.

## FACTS

On June 12, 2003, plaintiff and third-party citation petitioner, Stonecrafters, Inc., filed a class action complaint against defendant, Wholesale Life Insurance Brokerage, Inc., which was served on June 17, 2003. The complaint alleged violations of the federal Telephone

Consumer Protection Act of 1991 (TCPA) (47 U.S.C. §227 *et seq.* (2000)), common-law conversion, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Fraud Act) (815 ILCS 505/1 *et seq.* (West 2006)). The complaint alleged that Wholesale Life had sent mass, unsolicited, one-page facsimile advertisements to prospective clients without permission. Stonecrafters asserted that the faxes caused actual damage to the recipients by the wear and tear on the fax equipment, and the loss of toner and paper, without permission.

On July 23, 2003, Wholesale Life tendered a notice of the complaint to third-party citation respondent, Milwaukee Insurance Co. (MIC), seeking a defense based on its commercial general-liability policy with MIC. MIC responded by letter denying a duty to defend the suit or cover any liability.

On December 17, 2004, Stonecrafters and Wholesale Life reached a preliminary agreement to settle the claims for $5,999,999.98. Thereafter, Stonecrafters moved for approval of the proposed class settlement. On January 11, 2005, the trial court entered an order certifying the settlement class, preliminarily approving the class action settlement, and approving the class notice. Following a hearing on May 2, 2005, the trial court determined that (1) the settlement was made in reasonable anticipation of liability; (2) the settlement amount was fair and reasonable; (3) Wholesale Life's decision to settle conformed to the standard of a prudent uninsured; and (4) the agreed damages amount was what a reasonable prudent person in Wholesale Life's position would have settled for on the merits of the claims in this litigation. The judgment approved Wholesale Life's assignment to the class of all of Wholesale Life's claims, rights to payment, and rights of action against every insurer covering any portion of the period from November 15, 2002, through November 21, 2002, including MIC. The settlement provided that the judgment was to be collectible only against Wholesale Life's insurers, including MIC. It did not release the judgment against Wholesale Life, the asserted claims that were the basis for the entry of the judgment, or the right to enforce the judgment in favor of Stonecrafters and the class against Wholesale Life's insurers, including MIC.

On June 14, 2005, Stonecrafters, as representative of the class, initiated third-party citation proceedings against third-party citation respondents, Unitrin, Inc., and MIC (hereinafter referred to collectively as MIC) to discover assets and collect on Wholesale Life's commercial general-liability policy pursuant to section 2—1402 of the

Code of Civil Procedure (735 ILCS 5/2—1402 (West 2006)).[1] Stonecrafters filed a motion for payment of insurance proceeds on August 25, 2005, and MIC moved to strike the motion, arguing that the turnover of insurance proceeds and any attendant insurance coverage determinations could not be adjudicated in a supplementary third-party citation proceeding.

The trial court denied MIC's motion to strike, ruling that turnovers of insurance proceeds and any appurtenant insurance coverage issues can be adjudicated in supplementary proceedings brought pursuant to section 2—1402. Thereafter, on February 3, 2006, the court ordered MIC to file an answer and affirmative defenses to respond to the motion for payment of insurance proceeds. MIC answered and raised affirmative defenses.

On December 29, 2006, MIC moved for leave to issue discovery. Stonecrafters opposed the motion. On February 22, 2007, the trial court issued a memorandum order granting MIC's motion for leave to issue discovery. Finding *Guillen* applicable to the case, the trial court wrote that it did "not believe that the finding of reasonableness in the underlying litigation without the participation of [MIC] is a bar to [MIC's] right to raise the issue of the reasonableness of the settlement in the citation proceedings." Further, after reviewing *Those Certain Underwriters at Lloyd's v. Professional Underwriters Agency, Inc.*, 364 Ill. App. 3d 975 (2006), the trial court found nothing that would preclude the parties from taking limited discovery.

MIC issued interrogatories and production requests pursuant to the order. Stonecrafters refused to answer, raising several arguments including, *inter alia*, that the underlying judgment had been satisfied. MIC moved to compel Stonecrafters to provide substantive responses. The trial court granted the motion and directed Stonecrafters to file answers or specific objections to the discovery requests. After the deadline expired, Stonecrafters served its supplemental answers, once again refusing to provide any substantive information and reasserting the objections it previously had made.

MIC was forced to file a second motion to compel. Following another hearing, the trial court entered an order directing Stonecrafters to respond to the discovery requests, although the trial court sustained some of Stonecrafters' objections.

---

[1]Although Stonecrafters served citations to discover assets upon both MIC and Unitrin, Unitrin has never issued any insurance policy to Wholesale Life. Further, the trial court found that only MIC breached its duty to defend since Unitrin had never issued an insurance policy to Wholesale Life.

Even after the above order was entered, Stonecrafters still refused to comply. Instead, nearly 14 months after MIC served its discovery requests and without providing substantive answers to the discovery, Stonecrafters filed a motion for partial summary judgment on the issue of whether MIC breached its duty to defend Wholesale Life in the underlying suit. MIC responded to the summary judgment motion by renewing its previously filed motion to strike the citations based on subject matter jurisdiction.

On May 20, 2008, the trial court denied MIC's renewed motion to strike the citations and granted Stonecrafters' motion for partial summary judgment. The court found that MIC, but not Unitrin, had owed a duty to defend Wholesale Life in the class action, that MIC had breached its duty to defend Wholesale Life, and that consequently MIC was estopped from raising policy defenses to coverage for payment of the judgment. However, the trial court clarified that based on *Guillen* the estoppel did not bar MIC from challenging the reasonableness of the underlying settlement.

Thereafter, on September 5, 2008, the trial court granted Stonecrafters' request to certify the following two questions, pursuant to Rule 308, for appellate review:

"1. Is an insurer-citation respondent that failed to defend and is estopped to raise any coverage defense collaterally estopped to challenge the trial court's express findings in the judgment sought to be enforced that (1) the settlement was made in reasonable anticipation of liability, (2) the settlement amount was fair and reasonable, (3) the insured's decision to settle conformed to the standard of a prudent uninsured, and (4) the agreed damages amount was what a reasonable prudent person in insured's position would have settled for on the merits of the claims in the litigation?

2. Does the Illinois Supreme Court's decision in *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141 (2003), require that a circuit court permit an insurer-citation respondent to take discovery regarding the reasonableness of the insured-judgment debtor's decision to settle and the settlement amount (a) when the circuit court has already decided that the insurer-citation respondent breached its duty to defend and is estopped to raise any policy defense to coverage and (b) when the circuit court previously entered a judgment against the insured-judgment debtor only after expressly determining that the settlement was fair, reasonable, and adequate, and also that (1) the settlement was made in reasonable anticipation of liability, (2) the settlement amount was fair and reasonable, (3) the insured's decision to settle conformed to the standard of a prudent uninsured, and (4) the agreed damages

amount was what a reasonable prudent person in insured's position would have settled for on the merits of the claims in the litigation?"

Stonecrafters timely filed an application for leave to appeal and we granted the application. We note that the trial court included a third certified question proposed by MIC, which asked whether a trial court has subject matter jurisdiction to determine unliquidated, inchoate claims brought against a third-party citation respondent in a supplementary citation proceeding under section 2—1402. MIC applied for leave to appeal on the third certified question, in appeal No. 2—08—0868. However, we dismissed that application because it was untimely filed.

## ANALYSIS

### I. Subject Matter Jurisdiction

As an initial matter, MIC raises the same question in this appeal that it raised in its application for leave to appeal in No. 2—08—0868, which was dismissed as untimely: whether the trial court lacked subject matter jurisdiction to determine unliquidated, inchoate claims brought against a third-party citation respondent in a supplementary citation proceeding brought pursuant to section 2—1402. MIC contends that the supplementary proceeding brought pursuant to section 2—1402 is not a proper procedure by which Stonecrafters can seek a turnover of insurance proceeds against MIC. MIC asserts that this question can be raised at any time because it implicates the subject matter jurisdiction of the trial court, which cannot be waived. See *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 333-34 (2002).

This court's examination of an interlocutory appeal is usually limited to the questions certified by the trial court and, as with all questions of law, is a *de novo* review. *Thompson v. Gordon*, 356 Ill. App. 3d 447, 451 (2005), *aff'd*, 221 Ill. 2d 414 (2006); *Kronemeyer v. U.S. Bank National Ass'n*, 368 Ill. App. 3d 224, 226 (2006). In most circumstances, our task is to answer the certified questions rather than to rule on the propriety of the underlying order. *Thompson*, 356 Ill. App. 3d at 451. Where necessary, however, this court can go beyond the certified questions to consider the appropriateness of the order giving rise to the appeal. *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996); *Johnson v. State Farm Mutual Automobile Insurance Co.*, 323 Ill. App. 3d 376, 379 (2001). Moreover, to the extent necessary, a reviewing court may consider substantive issues in order to determine whether the trial court acted within its authority. *Lawrence M.*, 172 Ill. 2d at 526. Accordingly, in the present case we find it necessary to address

whether the trial court lacked subject matter jurisdiction to determine "unliquidated" claims brought in a section 2—1402 proceeding.

■ Section 2—1402 provides a mechanism by which a judgment creditor may initiate supplementary proceedings against a judgment debtor or a third party to discover the assets of a judgment debtor and apply those assets to satisfy an underlying judgment. 735 ILCS 5/2—1402 (West 2006); *Bloink v. Olson*, 265 Ill. App. 3d 711, 714 (1994). The proceedings may be initiated only after the trial court enters an underlying judgment. Section 2—1402(a) allows "[a] judgment creditor *** to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment." 735 ILCS 5/2—1402(a) (West 2006). Section 2—1402 authorizes a "creditor to conduct an examination of a third party [citation], and upon a showing that the third party is holding assets belonging to the judgment debtor, empowers the court to summarily compel the application of discovered assets or income to the satisfaction of the judgment, as long as the judgment debtor would have the right to recover such assets from the third party." *Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 587 (1996). Section 2—1402 is to be liberally construed, and the statute gives the trial court broad powers to compel the application of discovered assets or income to satisfy a judgment. *Eclipse Manufacturing Co. v. U.S. Compliance Co.*, 381 Ill. App. 3d 127, 133 (2007).

In *Second New Haven Bank v. Kobrite, Inc.*, 86 Ill. App. 3d 832, 835 (1980), we held that an insurer and third-party citation respondent may litigate any proper defense to recovery under the policy. In *Kobrite*, the plaintiff secured a judgment against the defendant, Kobrite. In a citation proceeding brought under Illinois's pre-1993 citation statute (Ill. Rev. Stat. 1981, ch. 110, par. 73), the plaintiff sought to recover the balance due on the proceeds of a fire insurance policy issued to Kobrite by the insurance companies. The trial court ordered the insurers to pay the plaintiff the amount of Kobrite's loss over their objection that the insured had not filed proofs of loss pursuant to the policies. *Kobrite*, 86 Ill. App. 3d at 833-34. The insurers appealed, contending that they did not hold assets in the nature of insurance proceeds, because the judgment debtor failed to file proofs of loss as a precondition of liability. At issue was whether the plaintiff, as judgment creditor of the insured, could recover in a citation proceeding against an insurer absent the insured's compliance with the policy provisions requiring the insured to file proofs of loss. *Kobrite*, 86 Ill. App. 3d at 834-35.

We noted that, generally, " 'a judgment creditor may not recover from a third-party citation [respondent] unless the judgment debtor

could have recovered from the third-party [respondent] in a citation proceeding.' " *Kobrite*, 86 Ill. App. 3d at 835, quoting *Sobina v. Busby*, 62 Ill. App. 2d 1, 13-14 (1965). "However, insurance proceeds, although contingent, may be an asset of the debtor to the extent that rights under the policy may be adjudicated in the citation proceedings." *Kobrite*, 86 Ill. App. 3d at 835. Thus, we held that, in the adjudication, the citation respondent may litigate any proper defense to recovery under the policy. *Kobrite*, 86 Ill. App. 3d at 835.

Normally, the failure to comply with a condition of a fire insurance policy requiring proof of loss within a specific period will relieve the insurer of its duty to perform under the contract. However, in *Kobrite*, we ruled that a judgment creditor in a citation proceeding who seeks to recover the proceeds of the debtor's insurance policy, and thus stands in the position of the insured debtor, was not prevented from recovery merely because of the debtor's inaction. *Kobrite*, 86 Ill. App. 3d at 835. We found that the plaintiff "was clearly proceeding in place of Kobrite, the insured, and any defenses on the policy could have and should have been asserted in the supplemental proceedings." *Kobrite*, 86 Ill. App. 3d at 836. Accordingly, we affirmed the trial court's adjudication of rights under the fire insurance policies in the citation proceeding. *Kobrite*, 86 Ill. App. 3d at 837.

■ In the present case, MIC asserts that it should not have to adjudicate *unliquidated* claims against third parties, and therein lies the difference. MIC contends that Stonecrafters must prove, in part, that MIC owed a duty to defend Wholesale Life and that MIC breached that duty and is thus estopped from raising policy defenses to coverage. MIC asserts that, because Stonecrafters must prove these claims, MIC does not hold any of Wholesale Life's liquidated assets that are subject to turnover in the supplementary proceedings. We fail to see the logic of this argument. *Kobrite* instructs that the rights of the insurer third-party citation respondent can be adjudicated in citation proceedings. See also *Sobina v. Busby*, 62 Ill. App. 2d 1, 16 (1965). Furthermore, insurance proceeds are a potential asset of the debtor-insured and are subject to citation proceedings. See *Eclipse*, 381 Ill. App. 3d at 129 (third-party citation proceeding against insurer to collect policy proceeds on behalf of class). Accordingly, we reject MIC's argument and find that the trial court had subject matter jurisdiction.

## II. Is an Insurer That Is Estopped From Raising Coverage Disputes Collaterally Estopped From Challenging the Trial Court's Express Finding of Reasonableness of the Underlying Settlement Between the Plaintiff and the Defendant?

We now turn to the first certified question, which essentially asks whether an insurer that has breached its duty to defend and is

prevented from raising coverage disputes is also collaterally estopped from challenging the trial court's express finding of reasonableness of the underlying settlement. We answer this question in the negative.

*Guillen* plays a significant role in the determination of both certified questions presented in this appeal. In that case, the plaintiff filed an action against her landlords, claiming that she was poisoned by lead paint. The landlords tendered the claim to their insurer, which denied coverage, did not defend under a reservation of rights, and did not file a declaratory judgment action. The plaintiff and the landlords entered into a settlement agreement, in which the landlords agreed to pay the plaintiff $600,000 in exchange for a release from liability for any claims relating to the plaintiff's lead poisoning. The landlords' obligation to pay was subject to the condition that it would be satisfied solely through the assignment to the plaintiff of the landlords' right to payment from their insurer. *Guillen*, 203 Ill. 2d at 144.

As the assignee of the landlords' claims against their insurer, the plaintiff filed a declaratory judgment complaint against the insurer, seeking a declaration that the insurer was obligated to pay the plaintiff the settlement amount agreed to by the landlords in the underlying suit. *Guillen*, 203 Ill. 2d at 144. The trial court found that the insurer had a duty to defend the underlying lawsuit brought by the plaintiff, that the insurer had breached that duty, and that the insurer was estopped from raising policy defenses to coverage. *Guillen*, 203 Ill. 2d at 147. However, the trial court granted the insurer's motion for summary judgment, finding that the plaintiff had failed to establish a claim for indemnification against the insurer. *Guillen*, 203 Ill. 2d at 147.

The appellate court reversed the summary judgment, finding that the landlords had a right to indemnification from the insurer and that they had properly assigned this right to the plaintiff. *Guillen*, 203 Ill. 2d at 147-48. The appellate court, however, noted its concerns over the possibility of collusion between an insured and an injured plaintiff who agree to settle a claim following an insurer's breach of the duty to defend. *Guillen*, 203 Ill. 2d at 148-49, citing *Guillen v. Potomac Insurance Co. of Illinois*, 323 Ill. App. 3d 121, 132-33 (2001). Even though the insurer's absence was caused by its own breach, the appellate court observed that courts permit an insurer to challenge either a settlement decision or the reasonableness of the settlement amount made in the insurer's absence. *Guillen*, 203 Ill. 2d at 149. The appellate court determined, as a matter of law, that the landlords' decision to settle with the plaintiff was made "in reasonable anticipation of liability" but remanded the cause to the trial court for a hearing to determine whether the settlement amount was reasonable. *Guillen*, 203 Ill. 2d at 149.

The supreme court agreed in part with the appellate court's determination. It found that the insurer breached its duty to defend the landlords from the plaintiff's claims and was estopped from raising policy defenses to coverage. *Guillen*, 203 Ill. 2d at 157. The court also found that the landlords had validly assigned their right to indemnification to the plaintiff in the underlying suit. *Guillen*, 203 Ill. 2d at 162.

In light of the public policy considerations raised by the appellate court, the supreme court found that, even though the insurer breached its duty to defend and was estopped from raising policy defenses to coverage, the insurer was nonetheless entitled to challenge the settlement agreement that was negotiated by its insured. The insurer argued that, in settlement agreements where the insured's own money is never at risk, the insured has no incentive to contest liability or damages with the injured plaintiff and that this could create "an environment that fosters collusion and fraud." *Guillen*, 203 Ill. 2d at 162. The court recognized that the risk of collusion and fraud would be lessened by placing a greater burden upon the plaintiff to prove that the settlement it reached with the insured was reasonable before the settlement would have any binding effect upon the insurer. *Guillen*, 203 Ill. 2d at 163. To define this burden, the court set forth criteria for establishing the reasonableness of a settlement agreement. The "litmus test must be whether, considering the totality of the circumstances, the insured's decision 'conformed to the standard of a prudent *uninsured*.' (Emphasis added.) [Citation.] Similarly, with respect to the amount of damages agreed to, the test is 'what a reasonably prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim.' " *Guillen*, 203 Ill. 2d at 163, quoting *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982).

The supreme court reasoned that the burden of proving reasonableness should be placed on the plaintiff because the plaintiff agreed to the settlement and, as between the plaintiff and the insurer, the plaintiff will have better access to the facts bearing on the reasonableness of the settlement. The court further concluded that the insurer should retain the right to rebut any preliminary showing of reasonableness with its own affirmative evidence bearing on the reasonableness of the settlement. *Guillen*, 203 Ill. 2d at 163-64.

While the supreme court agreed that the cause should be remanded for further proceedings bearing on whether the settlement agreement between the landlords and the plaintiff was reasonable under the circumstances, it departed from the appellate court's holding regarding the remand hearing. Whereas the appellate court primarily looked at the face of the complaint and concluded as a mat-

ter of law that the landlords' decision to settle with the plaintiff was reasonable and thus was not subject to challenge by the insurer, the supreme court could not reach that conclusion based on the record before it. *Guillen*, 203 Ill. 2d at 164. The court was concerned by the insurer's lack of opportunity to present any evidence on the issue of the reasonableness of the landlords' decision to settle. *Guillen*, 203 Ill. 2d at 164. Accordingly, the court ordered that, on remand, the circuit court consider whether both the landlords' decision to settle and the amount of damages were reasonable. *Guillen*, 203 Ill. 2d at 164.

MIC asserts that the *Guillen* decision clearly answers the first certified question. In both cases, the insurer refused to defend its insured's tender of a claim and, thereafter, the plaintiff and the insured settled, subject to the condition that the settlement would be satisfied solely through the assignment to the plaintiff of the insured's right to payment from its insurer. Similarly, in both cases, the insurer was found to have breached its duty to defend. Therefore, MIC asserts that, according to *Guillen*, it is not collaterally estopped from challenging the reasonableness of the underlying settlement that Wholesale Life negotiated without MIC's participation.

Stonecrafters counters that MIC is collaterally estopped from challenging the reasonableness of the settlement because of its previous refusal to defend before the settlement was final and the judgment was entered. Stonecrafters argues that, because MIC wrongfully refused to defend the action and the trial court determined in the settlement judgment, "based upon the evidence in the record and statements made in open court," that "(1) the settlement was made in reasonable anticipation of liability; (2) *** the settlement amount [was] fair and reasonable; (3) *** [Wholesale Life's] decision to settle conform[ed] to the standard of a prudent uninsured; and (4) *** the agreed damages amount [was] what a reasonable prudent person in [Wholesale Life's] position would have settled for on the merits of the claims in this litigation," MIC is bound by the judgment thereafter entered against its insured. See, *e.g.*, *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598, 624 (1994) (insurer estopped from relitigating coverage issues that were decided in the third-party action and is bound by judgment thereafter entered against its insured).

Stonecrafters further disputes MIC's reliance on *Guillen*. Stonecrafters maintains that the *Guillen* court did not address the conclusiveness of findings made in a judgment such as those in this case. Emphasizing the following passage: "The assignment of the [landlord's] right to payment from [the insurer] was included within the terms of the settlement agreement. No other payment obligation

was imposed upon [the landlords] *and no judgment was entered against them*" (emphasis added) (*Guillen*, 203 Ill. 2d at 144), Stonecrafters maintains that no judgment was entered in *Guillen*; rather, the underlying case was settled and dismissed prior to judgment. Stonecrafters points out that the settlement judgment in the present case, unlike in *Guillen*, contained the numerous findings detailed above, and therefore, because these were already litigated and entered against Wholesale Life, they cannot be relitigated or collaterally attacked by MIC.

We disagree with Stonecrafters' interpretation of *Guillen* and further find that there is no basis for collateral estoppel. First, we do not find the facts in *Guillen* so dissimilar from the present case. In *Guillen*, as here, a settlement agreement was entered between the plaintiff and the defendant landlords. Similar to Stonecrafters, the plaintiff in *Guillen* was assignee of the rights of the defendant landlords and retained the right to collect the insurer's obligation to pay the settlement amount agreed to because the insurer breached its duty to defend. Merely because the defendant landlords were not found liable for the plaintiff's alleged exposure to lead-based paint and dust, and no judgment was entered against them, does not mean that the settlement agreement precluded the insurer's obligation to pay. Parties may enter into a settlement agreement without admitting liability. In fact, under the terms of the present settlement agreement, Wholesale Life did not admit liability, although Wholesale Life remains legally obligated to the creditor class until the judgment is satisfied from Wholesale Life's insurance assets.

Second, we do not read *Guillen* so narrowly as to preclude MIC from challenging the reasonableness of the settlement. *Guillen* instructs that a plaintiff must prove that its settlement with the insured is reasonable before that settlement can have any binding effect upon the insurer, avoiding the possibility of collusion to defraud the insurer. The criteria established by *Guillen* involve a "commonsense consideration of the totality of 'facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.' " *Guillen*, 203 Ill. 2d at 163, quoting *Miller*, 316 N.W.2d at 735. As noted, this burden is one borne of practicality because the plaintiff has better access to the facts bearing on the reasonableness of the settlement. However, the insurer retains the right to rebut any preliminary showing of reasonableness. *Guillen*, 203 Ill. 2d at 164. Certainly, the cited conditions implicate the need for a hearing where the plaintiff presents facts bearing on the reasonableness of the settlement, which the insurer may contest. Of course, facts cannot be submitted at the hearing without the benefit of prior discovery.

In *Guillen*, the supreme court modified the judgment of the appellate court and remanded the case to the circuit court to consider whether both the landlords' decision to settle and the amount of damages were reasonable. *Guillen*, 203 Ill. 2d at 164. The appellate court had looked primarily at the face of the complaint filed by the plaintiff against the landlords and concluded that the landlords' decision to settle with the plaintiff was reasonable, as a matter of law, and was not subject to challenge by the insurer. The supreme court could not reach the conclusion, as a matter of law, that the landlords acted as a prudent uninsured when they decided to settle with the plaintiff. Additionally, the insurer had not had the opportunity to present any evidence on the issue of the reasonableness of the landlords' decision to settle. *Guillen*, 203 Ill. 2d at 164.

■ Similar to *Guillen*, MIC has not had the opportunity to present any evidence on the issue of the reasonableness of Wholesale Life's decision to settle. In fact, no hearing has taken place in which either MIC or Stonecrafters could present facts regarding the reasonableness of the decision to settle or the amount of the settlement.

The record reveals that the parties to the class action suit, which did not include MIC, requested that the trial court schedule a fairness hearing to provide the class proponents and opponents an opportunity to voice their opinions and objections regarding the settlement, to determine whether the class certification was proper, and to determine final approval of the settlement. In Stonecrafters' motion for preliminary approval of the class action settlement and notice to the class, Stonecrafters proposed that the court schedule a fairness hearing to provide a forum for the proponents and any opponents to voice opinions or objections about the settlement and to determine whether the class certification was proper. Stonecrafters also proposed that the court enter a preliminary approval order finding, among other things, that Wholesale Life's decision to settle conformed to the standard of a prudent uninsured, that the amount was fair and reasonable, and that the damages amount agreed to was what a reasonably prudent person in Wholesale Life's position would have settled for on the merits of the claims in this litigation. Notice to the class was sent. However, there is no record that MIC was sent or received notice of the preliminary motion to approve the settlement or notice of the "hearing." Further, paragraph seven of the settlement judgment provides that "a hearing was held before this Court on May 2, 2005," but the transcript of the proceedings on the day the settlement agreement was approved reveals that, of the parties that were present, none produced evidence regarding the reasonableness of the settlement pursuant to the requirements set forth in *Guillen*. No other reasonableness hearing was held regard-

ing the decision to settle or the amount of the settlement. Stonecrafters explained during oral argument that it did not send notice of the settlement agreement to MIC because MIC had denied its duty to defend and therefore Stonecrafters believed that MIC had no interest in the underlying suit.

Also during oral argument, Stonecrafters indicated that the trial court based its findings of reasonableness on the affidavit of Bruce F. Burns, the president of Wholesale Life. We find no difference between the procedure followed here and that used by the appellate court in *Guillen* where, based on the pleadings, the court found that the landlords' decision to settle was reasonable. The supreme court rejected this procedure because the insurer did not have the opportunity to present evidence on the issue.

Without a hearing, during which Stonecrafters presented facts regarding the reasonableness of the settlement and MIC was present to offer evidence in rebuttal, as set forth by *Guillen*, the trial court had no basis to find that (1) the amount (of the settlement) was fair and reasonable; (2) Wholesale Life's decision to settle conformed to the standard of a prudent uninsured; and (3) the damages amount agreed to was what a reasonably prudent person in Wholesale Life's position would have settled for on the merits of the claims in this litigation. We observe that the trial court, which also presided over the underlying case, pronounced in the settlement agreement that it would retain exclusive jurisdiction as to all matters relating to the administration, consummation, enforcement, and interpretation of the settlement agreement and any future recovery for the class against Wholesale Life's insurers. We further note that the trial court properly reconsidered its decision, as it has allowed Stonecrafters and MIC to pursue discovery to determine the reasonableness of the settlement in light of *Guillen*.

Both Stonecrafters and MIC present arguments regarding the doctrine of collateral estoppel. Three minimum threshold elements must be satisfied before the circuit court may conclude that a prior adjudication precludes litigation of an issue in the case before it: (1) the issue decided in the prior suit is identical to the one presented in the pending suit; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was either a party or in privity with a party in the prior suit. *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 461 (1996).

MIC's argument centers on the assertion that it cannot be estopped from challenging the reasonableness of the settlement because the issue presented in the citation proceedings is not the same issue as the one presented to the trial court for approval of the settle-

ment. MIC contends that the issue presented to the trial court in the underlying proceeding concerned the reasonableness of the settlement in light of the best interests of those absent class members that were affected by it, whereas the issue presented here concerns the reasonableness of the settlement and the amount in light of a prudent uninsured.

The parties also disagree over whether MIC was in privity with Wholesale Life in the underlying action. We question whether the parties are in privity. Under Illinois law, privity is said to exist between parties who adequately represent the same legal interests. *Yorulmazoglu v. Lake Forest Hospital,* 359 Ill. App. 3d 554, 559 (2005). MIC's interests are arguably not the same as those of Wholesale Life regarding whether the decision to settle conformed to the standard of a prudent uninsured, where Wholesale Life is not funding the settlement in any way. However, we need not reach either argument, because *Guillen* protects against the risk of collusion and fraud by placing a requirement upon the plaintiff to prove that the settlement it reached with the insured was reasonable *before that settlement can have any binding effect upon the insurer.* See *Pietras v. Sentry Insurance Co.,* 513 F. Supp. 2d 983, 986 (N.D. Ill. 2007) (plaintiff must prove that the settlement it reached with insured was reasonable before settlement is considered binding on insured and thus payable by insurer). Collateral estoppel is not applicable where strong public policy considerations exist. *People v. Wouk,* 317 Ill. App. 3d 33, 40 (2000); *Taylor v. Peoples Gas Light & Coke Co.,* 275 Ill. App. 3d 655, 663 (1995). Accordingly, we answer the first certified question in the negative and turn to the second certified question.

III. Does *Guillen* Permit an Insurer to Take Discovery Regarding the Reasonableness of the Underlying Settlement?

■ *Guillen* holds that the insurer retains the right to controvert any preliminary showing of reasonableness with its own affirmative evidence bearing on the reasonableness of the settlement agreement. This requires a hearing for the trial court to determine the reasonableness of the settlement where both the plaintiff and the insurer may present facts, regardless of whether the insurer has breached its duty to defend and is estopped to raise any policy defenses to coverage. The discovery process must therefore be available so that the parties can obtain the necessary evidence for their respective claims and defenses. Given the circumstances in this case, the trial court properly permitted the parties to take discovery on the issue of the reasonableness of the settlement.

Stonecrafters relies on *Pietras,* 513 F. Supp. 2d 983, for the proposition that discovery is not permitted under a *Guillen* analysis. That

case does not support Stonecrafters' position. *Pietras* involves a ruling on the plaintiffs' motions for summary judgment. In granting these motions, the district court found that no reasonable fact finder could conclude that the plaintiffs had failed to demonstrate that its settlement met the *Guillen* standard under the facts of the case. *Pietras*, 513 F. Supp. 2d at 987. The *Pietras* court never considered the question of whether discovery was available. Accordingly, based on the facts of this case, we answer the second certified question in the positive.

Certified questions answered; cause remanded.

ZENOFF, P.J., and HUTCHINSON, J., concur.