**AFFIRM; and Opinion Filed April 18, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00720-CV

**NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, VALLEY FORGE INSURANCE COMPANY, AND CONTINENTAL CASUALTY COMPANY, Appellants**
**V.**
**CE DESIGN, LTD., AND PALDO SIGN AND DISPLAY COMPANY, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-14467**

## OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Fillmore

Appellants National Fire Insurance Company of Hartford (National Fire), Valley Forge Insurance Company (Valley Forge), and Continental Casualty Company (Continental Casualty) filed a declaratory judgment action in Texas against appellees CE Design, Ltd. and Paldo Sign and Display Company. Appellees filed special appearances contesting the trial court's jurisdiction. The trial court signed an order granting the special appearances and dismissing appellees from the declaratory judgment action for lack of personal jurisdiction. Appellants then filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2013). We affirm the trial court's order.

**Background**

Appellees are representatives of a nationwide class of plaintiffs in a class action lawsuit filed in Illinois federal court (class action), *CE Design Ltd. et. al v. King Supply Company, LLC d/b/a Architectural Metals*, No. 09 C 2057, United States District Court for the Northern District of Illinois. In that class action, it is alleged that King Supply Company, LLC, d/b/a King Architectural Metals, (King) violated the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C.A. § 227 (West Supp. 2013), and committed common law conversion, by sending mass, unsolicited facsimile advertisements to appellees and other recipients without prior express invitation or permission.[1] In addition to damages, an injunction was sought prohibiting King from sending additional unsolicited facsimile advertisements or engaging in further violations of the TCPA.

King tendered its defense and sought indemnity from appellants for the claims asserted in the class action. Appellants are Illinois insurance companies who issued commercial general liability and commercial umbrella policies to King.[2] Appellants disclaimed coverage for the asserted claims and refused to defend King in the class action.

Appellees, individually and as representatives of the settlement class, entered into a settlement with King in the amount of $20,000,000. Appellees and the settlement class covenanted that, except for $200,000 of the settlement amount to be paid by King, they would

---

[1] King's motion to dismiss a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 85 ILL. COMP. STAT. ANN. 505/2 (West 2006), was granted in the class action. *See CE Design Ltd. v. King Supply Co., LLC*, No. 09 C 2057, 2012 WL 2976909, at *1 (N.D. Ill. July 20, 2012). King's motion to dismiss the state law conversion claim had been granted in the class action, but appellees were allowed to replead the previously dismissed conversion claim. *See id.* at *3 n.3.

[2] Valley Forge issued a commercial general liability policy to King for the period March 20, 2008 through March 20, 2009. National Fire issued a commercial general liability policy to King for the period March 20, 2009 through March 20, 2010. Continental Casualty issued commercial umbrella policies to King for the periods March 20, 2008 through March 20, 2009 and March 20, 2009 through March 20, 2010.

not execute against King or King's assets other than insurance to collect the remainder of the settlement amount.[3]

Appellants filed the declaratory judgment action underlying this appeal in a Texas district court, naming King and appellees as defendants, seeking a declaration that appellants have no duty to defend or indemnify King for claims asserted against King in the class action.[4] Appellees filed special appearances asserting appellants could not meet their burden to establish jurisdiction over appellees under the Texas long-arm statute or that the exercise of jurisdiction would comport with due process.[5]

The trial court granted appellees' special appearances and dismissed them from the declaratory judgment action. Appellants filed this interlocutory appeal.

## Personal Jurisdiction

In a single issue, appellants contend the trial court erred in dismissing appellees from the declaratory judgment action based on lack of personal jurisdiction. Appellants do not argue that general jurisdiction exists over appellees. They assert the trial court erred by failing to find specific jurisdiction over appellees.

### *Standard of Review*

---

[3] Shortly before the scheduled final approval hearing of the class action settlement, appellants filed a motion to intervene and/or stay the class action pending resolution of the coverage litigation pending in state court. *See King Supply*, 2012 WL 2976909, at *4. Appellants' intervention in the class action was denied as untimely and the motion to stay was denied as moot. *Id*. at *15. The reporter's record in this appeal contains a statement by appellees' counsel at a July 24, 2012 hearing before the trial court that the class action "just got finally resolved." *See also id*. ("By a separate order, we will enter final approval of the class settlement and final judgment."). Although not part of the record of this appeal, appellants attached a copy of a July 20, 2012 Final Approval and Judgment of Classwide Settlement in *King Supply*.

[4] Appellees filed a declaratory judgment action in Illinois, *CE Design, Ltd., Paldo Sign and Display Company, and Addison Automatics, Inc. v. Continental Casualty Co., Valley Forge Insurance Co., National Fire Insurance Co. of Hartford, Inc. and King Supply Co. LLLC*, No. MR 2098, Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, seeking a determination that insurance coverage exists for the claims asserted by them against King in the class action and a declaration that Continental Casualty is obligated to indemnify King for obligations contained in the Settlement Agreement under the Continental Casualty umbrella policy issued to King on March 20, 2008. *CE Design Ltd*, 2012 WL 2976909, at *4.

[5] Appellees alternatively sought dismissal under the doctrine of forum non conveniens. *See In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 675–76 (Tex. 2007) (orig. proceeding) (dismissal on forum non conveniens grounds is appropriate when sufficient contacts between the defendant and the forum state exist so as to confer personal jurisdiction, but the case itself has no significant connection to the forum state); *Sarieddine v. Moussa*, 820 S.W.2d 837, 839 (Tex. App.—Dallas 1991, writ denied) (forum non conveniens is equitable doctrine exercised by courts to resist imposition of an inconvenient jurisdiction on a litigant, even if jurisdiction is supported by the long-arm statute and would not violate due process). Having granted their special exceptions based on lack of personal jurisdiction over them, the trial court did not rule on the alternative forum non conveniens argument.

Because the question of whether a trial court has personal jurisdiction over a nonresident defendant is one of law, we review de novo the trial court's determination of a special appearance. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, the trial court does not file findings of fact and conclusions of law in support of its special appearance ruling, we infer all facts necessary to support the judgment and supported by the evidence. *Moki Mac*, 221 S.W.3d at 574 (citing *BMC Software*, 83 S.W.3d at 795). However, when, as here, the appellate record includes the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal. *BMC Software*, 83 S.W.3d at 795.

### *Burden of Proof*

In a challenge to personal jurisdiction, a plaintiff and defendant bear shifting burdens of proof. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden to plead sufficient allegations to bring a nonresident defendant within the reach of the Texas long-arm statute. *Id.*; *BMC Software*, 83 S.W.3d at 793. The plaintiff's pleadings and its response to the special appearance may be considered in determining whether the plaintiff satisfied its burden. *Camac v. Dontos*, 390 S.W.3d 398, 405 (Tex. App.—Dallas 2012, no pet.); *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied).[6] Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant bears the burden of negating all bases of jurisdiction alleged by the plaintiff. *BMC Software*, 83 S.W.3d at 793; *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores*, 270 S.W.3d 741, 748 (Tex. App.—Dallas 2008, pet. denied) (en banc). "Because the plaintiff defines the scope

---

[6] We are unpersuaded by appellees' assertion that appellants failed to plead jurisdictional facts. In addition to facts alleged in their original petition for declaratory relief, appellants set out their factual allegations in support of jurisdiction in their opposition and supplemental opposition to appellees' special appearance and motion to dismiss. *See Camac*, 390 S.W.3d at 405; *Flanagan*, 232 S.W.3d at 374.

and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly*, 301 S.W.3d at 658. The defendant can discharge its burden to negate those allegations on either a factual or legal basis:

> Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.* at 659; *see 2007 E. Meadows, L.P. v. RCM Phoenix Partners, L.L.C.*, 310 S.W.3d 199, 204 (Tex. App.—Dallas 2010, pet. denied).

### *General and Specific Jurisdiction*

The Texas long-arm statute permits Texas courts to exercise jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (West 2008). Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction comports with federal and state constitutional due process guarantees. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). The long-arm statute's broad language allows Texas courts to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac*, 221 S.W.3d at 575 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). Under constitutional due process analysis, personal jurisdiction is achieved "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.* at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The purpose of minimum contacts analysis is to protect a nonresident defendant from

being haled into court when its relationship with the forum state is too attenuated to support jurisdiction. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). "Significant contacts suggest that the defendant has taken advantage of forum-related benefits, while minor ones imply that the forum itself was beside the point." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). Only if minimum contacts are established does the court consider the second prong of the constitutional due process analysis—whether maintenance of the action offends traditional notions of fair play and substantial justice. *Foley v. Trinity Indus. Leasing Co.*, 314 S.W.3d 593, 602 (Tex. App.—Dallas 2010, no pet.); *see also Clark v. Noyes*, 871 S.W.2d 508, 520 (Tex. App.—Dallas 1994, no writ).

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795–96. General jurisdiction will attach if the defendant's contacts with the forum are continuous and systematic, regardless of whether the alleged liability arises from those contacts. *Id*. at 796. General jurisdiction is "dispute-blind," as it permits the court to "exercise jurisdiction over a nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) ("'[G]eneral' or 'all purpose' jurisdiction permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile.)"). Thus, general jurisdiction involves a "more demanding minimum contacts analysis" than is involved in specific jurisdiction and has a "'substantially higher' threshold." *PHC-Minden*, 235 S.W.3d at 168 (quoting *CRS, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) and 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5). "Usually, 'the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less

extensive than that will not qualify for general in personam jurisdiction." *Id.* (quoting 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5).

Specific jurisdiction is dispute-specific and attaches when the plaintiff's cause of action arises out of or relates to the nonresident defendant's contacts with the forum state. *Retamco*, 278 S.W.3d at 338. The analysis focuses on the relationship among the defendant, the forum, and the litigation. *Id.*; *see also Fiore*, 134 S. Ct. at 1121 n.6 (Specific or "case-linked" jurisdiction depends on an affiliation between the forum and the underlying controversy, (*i.e.*, an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.")) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). For specific jurisdiction to attach, there must be a substantial connection between the nonresident defendant's contacts with the forum and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

Under either a specific or general jurisdiction analysis, the relevant contacts are those through which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco*, 278 S.W.3d at 338. In determining purposeful availment, we consider three issues. *Id.* at 338–39. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person. *Id.* at 339. Second, the contacts must be purposeful rather than random, fortuitous, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* What is important is the quality and nature of the defendant's contacts with the forum rather than their number. *Id.*

*Analysis*

It is undisputed that appellants are insurance companies organized and existing under the laws of Illinois, with their principal place of business in Illinois; King is organized and exists

under the laws of Texas, with its principal place of business in Texas; and appellees are organized and exist under the laws of Illinois, with their principal places of business in Illinois, and do not maintain a designated agent for service in Texas. Appellees supported their special appearances with the affidavits of their respective Presidents, John Pezl and Madeline Paldo. The evidence in support of their special appearances is that appellees do not: maintain an office or place of business in Texas and their only places of business are in Illinois; have a regular or persistent presence in Texas; have any employees located in Texas; have a Texas telephone number or address; have a bank account in Texas; send directors, officers, employees, or agents into Texas; regularly, continuously, or systematically advertise or solicit business in Texas; regularly, continuously, or systematically direct business activities at residents of Texas; derive substantial revenues from goods or things used or consumed, or from services rendered, in Texas; own, use, possess, control, or otherwise have any interest in any real estate, asset, or thing of value located in Texas; pay Texas income taxes or file Texas corporate tax returns; or, regularly or systematically conduct substantial business activities within Texas.

Appellants argue the trial court erred by granting appellees' special appearances because appellees are subject to specific jurisdiction. According to appellants, appellees committed a series of acts on behalf of members of the class action "all aimed at [King,] a Texas entity, and all intended to result in the recovery of funds under Texas insurance policies and under the privileges, benefits and protections of the laws" of Texas. Appellants do not contend specific jurisdiction over appellees is due to a single act or fact, but contend specific jurisdiction results from appellees' multiple contacts with Texas: representation of over 12,000 Texas resident class members and settlement of the Texas residents' claims with King, a Texas entity, in the class

action;[7] and "commitment" to fund and pursue recovery of the class action settlement almost exclusively from the proceeds of King's insurance policies issued in Texas by appellants. Appellants contend that, when taken together, appellees' "acts" demonstrate sufficient minimum contacts with Texas to warrant personal jurisdiction.

Appellees serve as representatives of a nationwide class consisting of approximately 143,000 class members.[8] About 12,400, or nine percent, of those class members reside in Texas. Appellants argue appellees established minimum contacts with Texas and have waived any objection to personal jurisdiction in Texas "by virtue of the representation of a class having a nationwide scope," which includes a "large" number of Texas residents who may potentially benefit from King's insurance policies. However, appellants have cited to no authority, and our research has located none, to support a contention that representation of a class that is nationwide in scope subjects a class representative to personal jurisdiction as a defendant in an insurance coverage lawsuit filed by a third-party in any state in which a class member resides. Appellants argue that "the logical analogue to" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), is that "class representatives holding themselves out as representing the claims of class members located in multiple jurisdictions cannot use lack of personal jurisdiction as an excuse to avoid litigating matters arising out of a class-action settlement in jurisdictions in which class members reside." To the contrary, the court in *Shutts* held merely that "a forum State may exercise

---

[7] Appellants argue, in support of their assertion appellees are subject to specific jurisdiction in Texas, that the class action arises from actions performed by King at its Texas office. While the allegedly wrongful violation of the the TCPA and common-law conversion resulted from facsimile transmissions from King's Texas business, the claims in the class action lawsuit result from the *receipt* of those unsolicited facsimiles by nationwide class members and the alleged resulting statutory and tort conversion damages. *See generally*, *Stonecrafters, Inc. v. Wholesale Life Ins. Brokerage, Inc.*, 915 N.E.2d 51, 53 (Ill. App. Ct. 2009) (unsolicited facsimile advertisements allegedly caused actual damage to the recipients by wear and tear on the facsimile equipment, and the loss of toner and paper, without permission), *appeal denied*, 924 N.E.2d 461 (Ill. 2010); *The Film and Tape Works, Inc. v. Junetwenty Films, Inc.*, 856 N.E.2d 612, 624 (Ill. App. Ct. 2006) (conversion is a tort); 735 ILL. COMP. STAT. § 5/2-209(a)(2) (2008) (under Illinois law, any person, whether or not a citizen or resident of Illinois, who in person or through an agent commits a tortious act within Illinois is subject to the jurisdiction of the courts of Illinois); *Gray v. Am. Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761, 762–63 (Ill. 1961) (in law, place of a wrong is where last event takes place which is necessary to render actor liable; alleged negligence in manufacturing valve cannot be separated from the resulting injury that occurred in Illinois; tort was committed in Illinois). Because the statutory and common law damages in this case were alleged to have occurred nationwide, the fact the facsimile transmissions originated in Texas is not alone sufficient to subject the class representatives of injured parties to special jurisdiction in Texas.

[8] King sent approximately 669,000 unsolicited advertisements by facsimile, and a number of the class members received multiple facsimiles. *See King Supply*, 2012 WL 2976909, at *3.

jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." *Shutts*, 472 U.S. at 811. As the court stated in *Shutts*, "[t]he burdens placed by a State upon an absent class-action plaintiff are not of the same order or magnitude as those it places upon an absent defendant." *Id*. at 808. Likewise, appellants have cited no authority, and our research has located none, supporting their argument that a "large percentage" of class members residing in a state subjects a class representative to personal jurisdiction as a defendant in an insurance coverage lawsuit filed by a third-party in that state, and we are unpersuaded this argument supports personal jurisdiction over appellees.

In contrast, appellees cite *Pekin Insurance Co. v. Meadoworks, LLC*, No. 1-12-1710, 2013 IL. App. (1st) 121710-U (Ill. App. Ct. Mar. 1, 2013) (unpublished order) in response to the arguments asserted by appellants. In *Pekin*, the Illinois Court of Appeals held that a Missouri resident's act of suing Illinois residents (a company, Meadoworks, and its principal, Brian Walsh) in Missouri under federal and Missouri law for transmitting unsolicited advertising facsimiles was insufficient contact with Illinois to justify exerting personal jurisdiction over the Missouri resident as a defendant in an Illinois declaratory judgment action regarding coverage under Meadoworks' liability insurance. *Id*. at *5. Like appellants here, in *Pekin*, "[t]he insurance company's main argument is that personal jurisdiction is properly asserted because the Missouri [plaintiff] created meaningful and substantial contacts with Illinois by suing and giving service to two of its residents, and could have reasonably expected to be haled into an Illinois courtroom regarding the availability of a defendant's insurance coverage." *See id*. at *1. The Illinois court disagreed with the insurer's contention that it alleged a *prima facie* basis for exerting jurisdiction over the plaintiff in the Missouri case by alleging the Missouri plaintiff "sued Illinois residents, who are insured by an Illinois insurance company, under policies of

insurance issued in Illinois." *Id*. at \*3. The court stated that "the most efficient forum for resolving coverage is forum venue where the underlying complaint will be litigated." *Id*. at \*5.

Appellants acknowledge that the "basic factual scenario" of *Pekin*, "that of an insurer seeking a declaration of no coverage for an underlying action over TPCA violations," is the same as the declaratory judgment action filed by appellants. However, appellants contend *Pekin* is distinguishable because the Missouri resident defendant in the Illinois declaratory judgment action was not a representative of a nationwide class including Illinois residents. Appellants' attempt to distinguish *Pekin* overlooks the fact that the Missouri resident named as a defendant in *Pekin* was the plaintiff in the underlying suit, *Evans & Green, LLP v. Meadoworks, LLC*, No. 11-3380-CV-S-ODS, 2012 WL 137885 (W.D. Mo. Jan. 17, 2012), where it alleged it represented itself and "a purported class of similarly situated individuals," who received unsolicited advertisements by facsimile, and that "members of the class number in the hundreds or thousands." *Id*. at \*1. Further, the *Meadoworks* lawsuit, like the appellees' Illinois class action, not only alleged statutory violations of the TCPA, but also tort claims, including conversion. *Id*.; *see also Pekin*, 2013 IL. App. (1st) 121710-U, at \*2. While we are not bound by the holding in *Pekin*, we find the court's reasoning persuasive on similar facts.

Appellants also argue, without citing any authority, that appellees' covenant that, except for $200,000 of the settlement amount to be paid by King, they would not execute against King or King's assets other than insurance to collect the remainder of the settlement amount, created a "shared legal interest" in King's insurance policies issued by appellants, and, combined with appellees' other "acts," was sufficient to confer specific jurisdiction over appellees. As an initial matter, appellants argue appellees stepped into King's shoes as the insured, as an assignee of King's rights under appellants' insurance policies. However, the record contains no assignment of King's claims against appellants or King's rights under its insurance policies. *See Rainey-*

–11–

*Mapes v. Queen Charters, Inc.*, 729 SW.2d 907, 912 (Tex. App.—San Antonio, 1987, writ dism'd by agr.) (where assignment agreement was not before the court, it could not determine obligations concerning payment). In their reply brief, appellants argue appellees are equitable assignees or judgment creditors of King with regard to the proceeds of King's insurance policies. However, our record does not contain a judgment in the class action, and, accordingly, there is no record support for the argument that appellees are "judgment creditors."[9] However, assuming, without deciding, the accuracy and authenticity of the July 20, 2012 Final Approval and Judgment of Classwide Settlement attached to appellants' brief, or, as argued by appellants, that appellees are equitable assignees of King's rights to proceeds of its insurance policies, we do not accept the assertion that appellees jurisdictionally "stand in the shoes" of King or have consented to or waived any objection to personal jurisdiction in Texas. *See Fiore*, 134 S. Ct. at 1122 ("minimum contacts" analysis looks to defendant's contacts with forum State itself, not the defendant's contacts with persons who reside there).

We are unpersuaded by appellants' contention that appellees' alleged "acts" demonstrate sufficient minimum contacts with Texas to warrant personal jurisdiction over appellees. The evidence fails to show appellees purposefully availed themselves of the privilege of conducting activities in Texas, thus invoking the benefits and protections of Texas law. *See Retamco*, 278 S.W.3d at 338. Accordingly, on this record, appellees did not have sufficient minimum contacts to support the exercise of specific jurisdiction. Therefore, we need not decide whether the exercise of jurisdiction over appellees comports with the traditional notions of fair play and substantial justice. We conclude the trial court did not err by granting appellees' special

---

[9] We note that the class action Settlement Agreement indicated the judgment to be entered is to be collectible against King and King's insurers and did not release King from the judgment to be entered or CE Design, Paldo Sign, or the settlement class members' right to enforce the judgment. *Cf. Stonecrafters*, 915 N.E.2d at 54 (settlement of class action provided judgment was to be collectible only against defendant's insurers and judgment approved defendant's assignment to the class of its claims, rights to payment, and rights of action against its liability insurers).

appearances and dismissing them from the Texas declaratory judgment action.  Accordingly, we resolve appellants' sole issue against them.

## Conclusion

Having resolved appellants' sole issue against them, we affirm the trial court's order granting appellees' special appearances and dismissing appellees from the Texas declaratory judgment action.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

130720F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD, VALLEY
FORGE INSURANCE COMPANY, AND
CONTINENTAL CASUALTY
COMPANY, Appellants

On Appeal from the 160th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. 11-14467.
Opinion delivered by Justice Fillmore,
Justices Bridges and Lewis participating.

No. 05-13-00720-CV        V.

CE DESIGN, LTD., AND PALDO SIGN
AND DISPLAY COMPANY, Appellees

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees CE Design, Ltd., and Paldo Sign and Display Company
recover their costs of this appeal from appellants National Fire Insurance Company of Hartford,
Valley Forge Insurance Company, and Continental Casualty Company.


Judgment entered this 18th day of April, 2014.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

–14–