**Affirm and Opinion Filed August 20, 2021**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-00274-CV**
_____

**STEWARD HEALTH CARE SYSTEM LLC AND SOUTHWEST
GENERAL HOSPITAL, LP, Appellants
V.
FRANK SAIDARA, Appellee**

**On Appeal from the 193rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-18-16862**

## OPINION

Before the Court sitting En Banc
Opinion by Justice Myers

Steward Health Care System LLC and Southwest General Hospital, LP bring

an interlocutory appeal of the trial court's order granting the special appearance filed

by Frank Saidara and dismissing appellants' causes of action against him.

Appellants bring one issue contending the trial court erred by granting Saidara's

special appearance because Saidara committed tortious acts in Texas. We affirm the

trial court's order granting Saidara's special appearance.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Steward Health is a Dallas-based health care system. It owns numerous hospitals, including Southwest General, located in San Antonio, Texas.

Saidara resides in California, and he is the vice president of corporate holdings for Prospect Medical Holdings, Inc., which has its principal place of business in Los Angeles, California.

In 2018, Prospect Medical approached Steward Health about acquiring the assets of Southwest General. To facilitate Prospect Medical's due diligence, Steward Health set up a virtual data room where documents relevant to the proposed transaction were uploaded. A subset of the data was placed into a more restrictive "virtual clean room." Prospect Medical tasked Saidara as well as other officers and high-level employees with conducting negotiations and performing due diligence related to the transaction. The individuals with access to the virtual clean room (the clean team), included Saidara. The members of the clean team were required to sign a clean team agreement that limited their disclosure of information, authorized them to prepare "evaluative analyses and aggregated summaries" of the sensitive materials for their individual use in evaluating the proposed transaction, prohibited unauthorized sharing or dissemination of the materials in the virtual clean room as well as any documents created that incorporated or used that sensitive information,

---

[1] Except as otherwise stated, these facts come from the parties' pleadings.

and restricted use of the sensitive information to the purposes permitted by a separate confidentiality agreement signed by Steward Health and Prospect Medical.[2]

Saidara accessed information online in the virtual data room and clean room. He also participated in electronic and telephonic communications with Steward Health and Southwest General relating to the potential transaction. On at least one occasion, Saidara traveled to Texas, toured the Southwest General facility with James Summerset, the interim chief executive officer of Prospect Health. Appellants alleged that while Saidara and Summerset visited Southwest General, "Summerset asked an unusual amount of questions about proprietary Southwest General data. Specifically, Summerset inquired about physician employment arrangements and compensation data." On September 15, 2018, after the visit to Southwest General, Saidara allegedly downloaded all the information from the virtual clean room.

On September 20, 2018, five days after Saidara had downloaded the data, Prospect Medical informed Steward Health that it was no longer interested in acquiring the assets of Southwest General. Appellants alleged that persons within Prospect Medical and Prospect Health later leaked information relating to the

---

[2] The confidentiality agreement included a forum-selection clause: "In the event a dispute arises concerning any of the provisions of this Agreement, it shall be submitted to and decided by the Courts of the Commonwealth of Massachusetts." The record does not show that any party has filed a motion to transfer the case to the Massachusetts courts. Neither Saidara nor appellants raised the forum-selection clause in the special appearance or response to the special appearance. Accordingly, we do not discuss its applicability to this case.

proposed transaction, which made it more difficult for Southwest General to market and sell its assets.

On November 7, 2018, appellants filed their original petition against Prospect Medical, Prospect Health, and Saidara. In their first amended petition, appellants alleged claims for: (1) common law fraud, (2) unfair competition,[3] (3) misappropriation of trade secrets in violation of the Texas Uniform Trade Secrets Act, (4) violation of the Texas Harmful Access by Computer Act, and (5) conspiracy to misappropriate appellants' trade-secret information. Appellants claimed that personal jurisdiction existed as to Saidara because he had contacts with Texas with respect to the complained-of acts.

Saidara filed a special appearance arguing the trial court lacked personal jurisdiction over him because: (1) there is no basis for general jurisdiction; and (2) the trial court cannot exercise specific jurisdiction because (a) the alleged activities supporting the claims against him occurred while he was in California acting in the course of his employment with Prospect Medical, (b) all his alleged wrongful acts

---

[3] Appellants do not specify the branch of "unfair competition" they allege. *See, e.g.*, James E. Hudson, III, *A Survey of the Texas Unfair-Competition Tort of Common-Law Misappropriation*, 50 BAYLOR L. REV. 921, 924–26 (1989) (noting Texas common law recognizes three branches of unfair competition: palming off, trade-secret misappropriation, and common-law misappropriation); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40 cmt. a (AM. LAW INST. 1995) (stating that unfair competition includes torts for misappropriation, infringement, unjust enrichment, and breach of confidence, but not breach of contract, breach of the duty of loyalty owed by an employee or other agent, or breach of confidence not involving a trade secret). Rather, they generally refer to their claim as "Unfair Competition" and contend that "by misleading Steward with their misrepresentations that Prospect intended to buy the assets of Southwest General and thereby inducing Steward to make Southwest General's most sensitive business information available to Prospect senior executives and ultimately all of Prospect, Prospect and Saidara have engaged in conduct that is contrary to honest practices in commercial matters."

–4–

were in connection with his employment so he is protected by the fiduciary-shield doctrine, and (c) "[appellants] have failed to plead any purposeful (wrongful) activities by Saidara originating in Texas."

Saidara attached his declaration to his special appearance. He stated in the declaration that he is a citizen of California and resides in Los Angeles. All his actions in relation to the proposed transaction between Prospect and appellants were in his capacity as Prospect's vice president of corporate development. In the confidentiality agreement, he was designated a member of the clean team with access to the information in the virtual clean room. He made one trip to Texas visiting San Antonio in connection with the proposed transaction. He was in California at the time appellants alleged he inappropriately downloaded confidential information or trade secrets. He accessed the information in the clean room for legitimate purposes related to Prospect's due diligence in the proposed transaction.

Appellants responded that the trial court had specific jurisdiction over Saidara but did not attach any evidence to support their allegations.[4] The trial court signed an order granting Saidara's special appearance and dismissing the claims against him. In that order, the trial court concluded that "there is no record evidence that

---

[4] The parties' briefs as well as the trial court's order and docket sheet indicate that a hearing was held on Saidara's special appearance. However, the record on appeal does not contain a reporter's record. Nevertheless, the parties do not contend that it was an evidentiary hearing. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783–84 (Tex. 2005) (declining to presume the special appearance hearing was evidentiary when the parties conceded that it was not).

–5–

would support the exercise of general jurisdiction over" Saidara and there was no specific jurisdiction.[5]  This interlocutory appeal followed.

## II.  SAIDARA'S SPECIAL APPEARANCE

Appellants raise one issue on appeal contending the trial court erred when it granted Saidara's special appearance.[6]  They argue the trial court has specific jurisdiction over Saidara because: (1) the Texas long-arm statute extends to Saidara's contacts; (2) Saidara had sufficient minimum contacts with Texas; (3) Saidara cannot show the exercise of specific jurisdiction would impose an unreasonable burden on him; and (4) the fiduciary-shield doctrine does not protect Saidara from specific jurisdiction.  Saidara responds that the trial court properly concluded it lacked personal jurisdiction over him because his contacts with Texas were insufficient to confer specific jurisdiction; and, even if he had sufficient minimum contacts with Texas, the exercise of personal jurisdiction over him does not comport with traditional notions of fair play and substantial justice.[7]

---

[5]  With respect to specific jurisdiction, the trial court stated:

> The Court also finds that Defendant Frank Saidara has not purposefully directed any business activities toward Texas, nor has he engaged in any activities that would support the exercise of specific jurisdiction.  The Court also finds that the exercise of personal jurisdiction over Defendant Frank Saidara would not comport with traditional notions of fair play and substantial justice.

[6]  Appellants do not challenge the portion of the trial court's order that concludes there was no evidence to support the exercise of general jurisdiction over Saidara.

[7]  Because we conclude appellants failed to meet their burden of pleading sufficient allegations to bring Saidara within the provisions of the Texas long-arm statute, we need not discuss whether the fiduciary-shield doctrine applies or whether the exercise of specific jurisdiction over Saidara would impose an unreasonable burden on him.

### A. Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that appellate courts review de novo. *E.g.*, *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id*. When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When the relevant facts in a case are undisputed, an appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish Texas jurisdiction. *Old Republic*, 549 S.W.3d at 558.

### B. Burdens of the Parties in a Special Appearance

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *E.g.*, *Old Republic*, 549 S.W.3d at 559; *Moncrief*, 414 S.W.3d at 149. In order to meet its burden, a plaintiff must show the act on which jurisdiction is predicated, not a prima facie demonstration of the existence of a cause of action. *Bruno's Inc. v. Arty Imports, Inc.*, 119 S.W.3d 893, 896–97 (Tex. App.—Dallas 2003, no pet.); *Clark v. Noyes*, 871 S.W.2d 508, 511 (Tex. App.—Dallas 1994, no pet.) (although Texas

courts use federal due process standard for analyzing minimum contacts, they do not use federal procedural rules, which would incorrectly place burden to show sufficient minimum contacts on the party seeking to invoke jurisdiction).  This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas.  *Alencar v. Shaw*, 323 S.W.3d 548, 553 (Tex. App.—Dallas 2010, no pet.).  If the plaintiff does not meet this burden, the defendant need only prove that it does not reside in Texas to negate jurisdiction.  *See Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 438 (Tex. 1982); *Jani-King Franchising, Inc. v. Falco Franchising, S.A.*, No. 05-15-00335-CV, 2016 WL 2609314, at *4, (Tex. App.—Dallas May 5, 2016, no pet.) (mem. op.).

Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum.  *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007); *accord Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017).  The "arises from or relates to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum state.  *Moki Mac*, 221 S.W.3d at 579.  In order for a nonresident defendant's contacts in a forum state to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.  *Id.* at 585; *accord Walden v. Fiore*, 571 U.S. 277, 284 (2014).  The

–8–

operative facts of the litigation are those facts the trial court will focus on to prove the nonresident defendant's liability. *See Jani-King*, 2016 WL 2609314, at \*5.

## III. ANALYSIS

Saidara asserted in his special appearance that appellants failed to meet their burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. To decide this issue, we must decide what documents may be examined to determine whether appellants met this burden. Appellants argue that the court looks to the pleadings and the plaintiff's response to the defendant's special appearance to determine whether the plaintiff has met this burden. Appellants included factual allegations in their response to the special appearance that were not in either their original or amended petitions. Appellants did not attach any evidence to their response to the special appearance.

Several of this Court's opinions,[8] as well as opinions from most of the other intermediate courts of appeals,[9] state that courts may consider facts alleged in a response to a special appearance as well as the plaintiff's petition to determine if the

---

[8] *See B.G.C. v. M.Y.R.*, No. 05-20-00318-CV, 2020 WL 5987913, at *2 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op.); *Invasix, Inc. v. James*, No. 05-19-00494-CV, 2020 WL 897243, at *4 (Tex. App.—Dallas Feb. 25, 2020, no pet.) (mem. op.); *Golden Peanut Co. v. Give & Go Prepared Foods Corp.*, No. 05-18-00626-CV, 2019 WL 2098473, at *4 (Tex. App.—Dallas May 14, 2019, no pet.) (mem. op.); *Cooper Gay Martinez del Rio y Asociados Intermediarios de Reaseguro S.A. de C.V. v. Elamex, S.A. de C.V.*, No. 05-16-01436-CV, 2017 WL 3599690, at *5 (Tex. App.—Dallas Aug. 22, 2017, no pet.) (mem. op.); *Seguros Afirme, S.A. de C.V. v. Elamex, S.A. de C.V.*, No. 05-16-01465-CV, 2017 WL 3599693, at *5 (Tex. App.—Dallas Aug. 22, 2017, no pet.) (mem. op.); *N. Frac Proppants, II, LLC v. 2011 NF Holdings, LLC*, No. 05-16-00319-CV, 2017 WL 3275896, at *2, 5 (Tex. App.—Dallas July 27, 2017, no pet.) (mem. op.); *Jani-King*, 2016 WL 2609314, at *4; *Nat'l Fire Ins. Co of Hartford v. CE Design, Ltd.*, 429 S.W.3d 806, 811 & n.6 (Tex. App.—Dallas 2014, no pet.) (noting Court unpersuaded by appellees' assertion that appellants failed to plead jurisdictional facts and stating that, in addition to facts alleged in their original petition for declaratory relief, appellants set out their factual allegations in support of jurisdiction in their opposition and supplemental opposition to appellees' special appearance and motion to dismiss); *Stull v. LaPlant*, 411 S.W.3d 129, 134 (Tex. App.—Dallas 2013, no pet.); *NexBank, SSB v. Countrywide Fin. Corp.*, No. 05-12-00567-CV, 2013 WL 2244830, at *2 (Tex. App.—Dallas May 22, 2013, no pet.) (mem. op.); *Camac v. Dontos*, 390 S.W.3d 398, 405 (Tex. App.—Dallas 2012, no pet.); *Crithfield v. Boothe*, 343 S.W.3d 274, 282 (Tex. App.—Dallas 2011, no pet.); *All. Royalties, LLC v. Boothe*, 329 S.W.3d 117, 120–21 (Tex. App.—Dallas 2010, no pet.); *Wilkert v. Year One, Inc.*, 320 S.W.3d 522, 524 (Tex. App.—Dallas 2010, no pet.); *Alencar v. Shaw*, 323 S.W.3d 548, 552 (Tex. App.—Dallas 2010, no pet.); *Ahrens & deAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 478 (Tex. App.—Dallas 2010, pet. denied); *Proctor v. Buell*, 293 S.W.3d 924, 930–31 (Tex. App.—Dallas 2009, no pet.); *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied).

[9] *See, e.g.*, *Patel v. Pate*, No. 02-16-00313-CV, 2017 WL 2871684, at *3 n.4 (Tex. App.—Fort Worth July 6, 2017, no pet.) (mem. op.) ("Courts may consider jurisdictional grounds alleged in responses to special appearances as well as the plaintiff's petition."); *Sembcorp Marine Ltd. v. Carnes*, No. 09-15-00430-CV, 2016 WL 3019552, at *2 (Tex. App.—Beaumont May 26, 2016, no pet.) (mem. op.) ("When evaluating the plaintiff's allegations, we consider the pleadings and Carnes's responses to appellants' special appearances."); *Mi Gwang Contact Lens Co.*, No. 13-13-00306-CV, 2015 WL 3637846, at *3 n.2 (Tex. App.—Corpus Christi–Edinburg June 11, 2015) (mem. op.) ("The trial court may properly consider additional allegations contained in a response to a special appearance."); *Accelerated Wealth, LLC v. Lead Generation & Mktg., LLC*, No. 04-12-00647-CV, 2013 WL 1148923, at *2 (Tex. App.—San Antonio Mar. 20, 2013, no pet.) (mem. op.) (same); *Hale v. Richey*, No. 10-11-00187-CV, 2012 WL 89920, at *4 (Tex. App.—Waco Jan. 11, 2012, no pet.) (mem. op.) (plaintiff's petition and response are considered in determining whether plaintiff met burden of pleading sufficient allegations); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("In determining whether the plaintiff satisfied its burden, a court may consider the plaintiff's pleadings as well as its response to the defendant's special appearance."); *Ennis v. Loiseau*, 164 S.W.3d, 698, 705 (Tex. App.—Austin 2005, no pet.); *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 249 n.7 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (allegations in petition "either alone or coupled with appellees' later assertions, offered in support of their response to Wright's special appearance" met plaintiff's burden to plead sufficient jurisdictional facts).

–10–

plaintiff pleaded sufficient allegations to invoke jurisdiction under the Texas long-arm statute. This practice, however, is contrary to both the Rules of Civil Procedure and precedent from the Texas Supreme Court.

Texas Rule of Civil Procedure 120a(3) states, "The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3). The text of a response to a special appearance (as opposed to evidentiary attachments to a response) does not fall into any of these categories. It is not a pleading. *See* TEX. R. CIV. P. 45 ("Pleadings in the district and county courts shall (a) be by petition and answer . . . .").

This Court's earliest opinion following this practice was *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied), and all our subsequent cases following this practice cite *Flanagan*. *Flanagan* cited *Ennis v. Loiseau*, 164 S.W.3d 698, 705 (Tex. App.—Austin 2005, no pet.). *Flanagan*, 232 S.W.3d at 374. *Ennis* cited *Wright v. Sage Engineering, Inc.*, 137 S.W.3d 238, 249 n.7 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). *Ennis*, 164 S.W.3d at 705. The court of appeals in *Wright* assumed that the allegations in the plaintiffs' petition, either alone or coupled with the assertions in the plaintiffs' response to the special appearance, met plaintiffs' initial burden to plead sufficient jurisdictional facts. *Wright*, 137 S.W.3d at 249 n.7. *Wright* cited as the basis of this practice *El Puerto*

*de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.*, 82 S.W.3d 622, 629 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). In *El Puerto*, the court of appeals concluded the plaintiffs' "pleadings" were sufficient to show jurisdiction in Texas because they alleged the defendant was "doing business in the State of Texas" and "committed torts in Texas." *El Puerto*, 82 S.W.3d at 629. Nothing in the *El Puerto* opinion suggests the trial court or the court of appeals looked to the plaintiffs' response to the special appearance for the jurisdictional allegations. The word "response" does not appear in the *El Puerto* opinion. Thus, *Wright*, *Ennis*, *Flanagan*, and all the cases citing them have no basis for their assertion that the plaintiff can present jurisdictional allegations in the response to the special appearance without including them in the petition.[10]

---

[10] Some courts of appeals in opinions predating *Wright* have followed the practice without citing any authority in support. *See, e.g., Freund v. Watley Enters., Inc.*, No. 07-99-0517-CV, 2000 WL 674699, at *7 (Tex. App.—Amarillo May 24, 2000, pet. denied) (not designated for publication) (although petition did not allege specific acts of defendant in Texas, the response to the special appearance did, and plaintiff's "allegations in its response to the special appearance were sufficient to raise the questions we have discussed"); *Bullen v. Dalton*, No. 01-98-00598-CV, 1998 WL 767733, at *4 (Tex. App.—Houston [1st Dist.] Nov. 5, 1998, no pet.) (not designated for publication) ("Appellees raised jurisdictional allegations in their response to the special appearance motion. Therefore, appellants had the burden to negate all jurisdictional claims raised by these pleadings . . . ."); *Garner v. Furmanite Australia PTY., Ltd.*, 966 S.W.2d 798, 801 n.1 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (jurisdictional facts alleged "in the sworn response to the special appearance").

The Corpus Christi–Edinburg court recognized there was a question whether "when determining whether the plaintiff has met its initial burden to plead sufficient allegations to show jurisdiction in Texas, do we look only at the third-party plaintiff's petition, or do we also consider other documents on file, such as a response to the special appearance?" *Frank A Smith Sales, Inc. v. Atlantic Aero, Inc.*, 31 S.W.3d 742, 746 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.) (internal quotation marks omitted). The court did not answer the question because even considering the other documents, the appellant "failed to plead sufficient allegations to show jurisdiction in Texas." *Id.*

–12–

The supreme court has not approved this practice. In *Kelly v. General Interior Construction, Inc.*, 301 S.W.3d 653 (Tex. 2010), the supreme court set out the procedure for the shifting burdens of proof in a special appearance. First, "the plaintiff bears the initial burden *to plead* sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id.* at 658 (emphasis added). The defendant then "bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* And where is the defendant to find the allegations it must negate? The supreme court provides the answer: "the defendant's corresponding burden to negate jurisdiction is tied to the allegations *in the plaintiff's pleading.*" *Id.* (emphasis added). If the plaintiff's petition lacks sufficient allegations to bring the defendant under the long-arm statute, "the plaintiff should amend the pleading to include the necessary factual allegations." *Id.* at 659. If the defendant, in its special appearance, presents evidence that disproves the plaintiff's jurisdictional allegations, then the plaintiff should present evidence in support of the petition's allegations. *Id.* If the plaintiff's evidence differs from the allegations in the petition, "then the plaintiff should amend the petition for consistency." *Id.* at 659 n.6. Thus, according to *Kelly*, the allegations on which the plaintiff bases the exercise of jurisdiction over the defendant must be in the petition. The plaintiff's response to the special appearance may contain evidence supporting the petition's jurisdictional allegations, but that evidence must be consistent with the allegations in the petition. "[T]he defendant's . . . burden to negate jurisdiction is

tied to the allegations in the plaintiff's pleading"; nothing in the supreme court's precedent suggests the defendant must negate jurisdictional allegations appearing only in the response to the special appearance.

To be consistent with *Kelly*, we conclude that the plaintiff must meet its initial burden on a special appearance by pleading, *in its petition*, sufficient allegations to invoke jurisdiction under the Texas long-arm statute. This Court's opinions to the contrary are overruled to the extent they conflict with this conclusion.

We now consider whether appellants met their burden of pleading sufficient allegations to bring Saidara within the provisions of the Texas long-arm statute. A plaintiff's petition satisfies the long-arm statute when it alleges the defendant did business, which includes committing a tort in whole or in part in Texas. *See* Civ. Prac. § 17.042(2); *Lombardo v. Bhattacharyya*, 437 S.W.3d 658, 679 (Tex. App.— Dallas 2014, pet. denied). In this case, appellants did not generally allege that Saidara committed a tort in Texas or did business in Texas. Accordingly, we consider whether they alleged facts showing Saidara committed a tort in Texas. *See* Civ. Prac. § 17.042(2).

Appellants allegations concerning acts by Saidara are as follows:

8. . . . Personal jurisdiction exists as to Saidara because he had contacts with Texas with respect to the acts complained of herein, including travel to Texas specifically directed at the transaction forming the basis of this lawsuit.

. . . .

–14–

16. Frank Saidara is the Vice President of Corporate Development for Prospect. Saidara was the senior executive tasked with obtaining Southwest General's trade secrets and other highly confidential information. Saidara visited Texas in connection with the sale of Southwest General's assets and participated in numerous communications (both electronically and telephonically) with counterparties in Dallas during which he misrepresented Prospect's intention to purchase Southwest General. Saidara's communications were intentional and were directed to Steward in Texas.

17. During one of Saidara's visits to Texas, he participated in a site visit at the Southwest General Facility. During that visit, Saidara was accompanied by James Summerset, the interim CEO of Nix Health [Nix Health Services Corporation is a hospital in San Antonio owned by Prospect Medical].

18. While on the site visit, Summerset asked an unusual amount of questions about proprietary Southwest General data. Specifically, Summerset inquired about physician employment arrangements and compensation data.

19. Saidara oversaw the due diligence for the transaction—the process through which Prospect and its representatives were able to review Southwest General's confidential and highly-sensitive business information before entering into a definitive asset purchase agreement.

. . . .

31. . . . [O]n September 14, 2018, or in the early morning hours of the next day, Prospect made its move. With no notice, Saidara entered the "clean room." He waited to do so until after midnight. Until that evening, Saidara's access to the due diligence information had been sporadic and mostly consisted of *viewing* financial related documents . . . . But on this adventure after midnight, Saidara *downloaded all* of the information in the clean room. This download took just over a half hour and left Saidara and Prospect, and perhaps others in possession of Steward's most sensitive information—information they can and inevitably will use to the benefit of themselves and Nix Health to the detriment of Steward, Southwest General, and patients and consumers of health care in Texas.

. . . .

**Count I – Fraud**

47. . . . [F]ollowing the indication of interest, Defendants misrepresented throughout the due diligence period . . . that Prospect intended to enter into a definitive asset purchase agreement for the assets of Southwest General and to close on such an agreement. Prospect never had any intention of doing so, and Defendants knew of that intention and their role in Prospect's scheme.

48. . . . Defendants intended that Plaintiffs would rely upon their misrepresentations by moving forward with the proposed transaction . . . .

**Count II - Misappropriation of Trade Secrets (Texas Uniform Trade Secrets Act)**

. . . .

52. Saidara's surreptitious middle-of-the-night downloading of the entire contents of the "clean room" constitutes a theft by Saidara and Prospect of Southwest General's trade secrets.

. . . .

54. . . . Prospect and Saidara acquired the trade secret information through improper means, including through fraud.

55. . . . Saidara disclosed Southwest General's trade secret information to other individuals at Prospect without the consent of Steward and Southwest . . . .

. . . .

58. Upon information and belief, Prospect's and Saidara's misappropriation of Southwest General's trade secrets was willful and malicious.

**Count III – Unfair Competition**

. . . .

60. . . . [B]y taking and retaining Southwest General's confidential information, . . . Prospect and Saidara have breached a confidential business relationship with Steward and Southwest General.

–16–

61. . . . [B]y misleading Steward with their misrepresentations that Prospect intended to buy the assets of Southwest General . . . , Prospect and Saidara have engaged in conduct that is contrary to honest practices in commercial matters.

. . . .

**Count IV – Violation of the Texas Harmful Access by Computer Act**

. . . .

66. . . . Defendants accessed Plaintiffs' data by accessing and downloading Steward's confidential and trade secret information contained in the Clean Room for a purpose other than evaluating the Transaction.

Appellants also alleged a conspiracy between Prospect and Nix Health, but that cause of action did not include any allegations against Saidara.

Appellants' allegations show the following concerning Saidara:

- He visited Texas in connection with the sale of Southwest General's assets.

- He visited Texas and participated in a site visit of Southwest General's facility with Summerset during which Summerset asked an unusual amount of questions.

- He had electronic and telephonic communications with counterparties in Dallas during which he misrepresented Prospect's intention to purchase Southwest General.

- He oversaw due diligence for the transaction.

- He went into the virtual clean room and downloaded all of Steward's confidential data.

- He disclosed the data to others at Prospect.

–17–

The only allegations of conduct by Saidara in Texas are that he visited Texas in connection with the sale, and he visited Texas on a site visit to Southwest General's facility with Summerset during which Summerset, not Saidara, asked questions. There is no allegation in the petition that Saidara made any misrepresentation during his visits to Texas. There is no allegation in the petition that he was in Texas when he made the misrepresentations in his electronic and telephonic communications. *See Jani-King*, 2016 WL 2609314, at * 4 (telephone calls and e-mails made from outside Texas do not allege commission of tort in Texas). Nor is there any allegation in the petition that Saidara made an in-person misrepresentation during his visit to Texas. Finally, there is no allegation that Saidara was in Texas when he downloaded all the data in the clean room.[11]

Appellants rely on allegations in their response to the special appearance that Saidara made fraudulent misrepresentations "[d]uring his visit to Texas," and "Saidara committed tortious fraud in Texas." However, as discussed above, the allegations to meet the long-arm statute must appear in the petition and not solely in the plaintiff's response to the special appearance. Accordingly we cannot consider those allegations.

---

[11] Saidara testified in his declaration that he was in California at the time appellants alleged he downloaded the information.

We conclude appellants have not pleaded sufficient allegations to bring Saidara within the provisions of the Texas long-arm statute. We overrule appellants' issue on appeal.

## IV. CONCLUSION

We affirm the trial court's order granting Saidara's special appearance.

190274f.p05

/Lana Myers//
LANA MYERS
JUSTICE

Opinion of the Court by Myers, J., joined by Burns, C.J., and Partida-Kipness, Reichek, Goldstein, Smith, and Garcia, JJ.

Burns, C.J., concurring, joined by Myers, Osborne, Molberg, Partida-Kipness, Reichek, Nowell, Carlyle, Goldstein, Smith, and Garcia, JJ.

Schenck, J., concurring.

Osborne, J., concurring in part and dissenting in part, joined by Pedersen, J., and joined in part by Molberg, J.

Carlyle, J., dissenting, joined by Molberg and Nowell, JJ.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEWARD HEALTH CARE
SYSTEM LLC AND SOUTHWEST
GENERAL HOSPITAL, LP,
Appellants

No. 05-19-00274-CV     V.

FRANK SAIDARA, Appellee

On Appeal from the 193rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-16862.
Opinion delivered by Justice Myers.
Court sitting en banc.

In accordance with this Court's opinion of this date, the order of the trial court granting the special appearance of appellee FRANK SAIDARA is **AFFIRMED**.

It is **ORDERED** that appellee FRANK SAIDARA recover his costs of this appeal from appellants STEWARD HEALTH CARE SYSTEM LLC and SOUTHWEST GENERAL HOSPITAL, LP.

Judgment entered this 20th day of August, 2021.